## PennDOT v. Fisher

*Philip L. Zulli, assistant counsel-in-charge,* for PennDOT.
*Todd A. Hoover,* for defendant.

DOWLING, *J.,* March 1, 1991—Mr. Fisher has appealed from a one-year suspension of his driving privileges for refusing to properly perform chemical testing as required under 75 Pa.C.S. §1547(b).

At a de novo hearing, the Commonwealth's undisputed evidence established that the appellant

blew one valid sample (0.23 percent), but did not give a second sample until more than three minutes later which, although registering 0.218 percent, was recorded by the machine as an insufficient reading. Ralph Markel, who was conducting the testing at the booking center, stated that after this occurred, "I offered him a second opportunity to re-administer the test. He said, 'No. You had your chance.' " (N.T. 11.) The court also viewed a videotape of the proceedings and found as a fact that after the first sample the defendant did not blow as hard as he could have, i.e., that he supplied insufficient breath. It was agreed that the reason the machine indicated an insufficient sample was because of the lapse of time.

It is argued by Mr. Fisher that in fact he did supply two valid readings, even though the latter was indicated to be deficient; and thus, that he has fulfilled the requirements of the statute. Unfortunately, the case law on this point is against him. It has been held that one test does not constitute a valid test. *Commonwealth v. Diulus,* 391 Pa. Super. 379, 517 A.2d 418 (1990). In *Commonwealth v. Schraf,* 135 Pa. Commw. 246, 581 A.2d 249 (1990), the appellant provided sufficient breath to produce an initial reading of 0.139 percent, but when given the second test required by 67 Pa. Code §77.24,* did not produce sufficient breath. The testimony was

---

* "(b) Procedures. . . . The procedures for alcohol breath testing shall include, at a minimum:

"(1) Two consecutive actual breath tests, without a required waiting period between the two tests.

"(2) One simulator test using a simulator solution designed to give a reading of 0.10 percent, to be conducted immediately after the second actual alcohol breath test has been completed. The lower of the two actual breath test results will be the result used for prosecution. . . ." 67 Pa.Code §77.24.

that she had not made a tight seal around the mouthpiece with her mouth. After the machine had completed its cycle, and time had run out, the appellant provided a sufficient sample which registered 0.18 percent. In overruling the trial court's granting of a demurrer, the court stated:

"We are thus left with the question of the trial court's interpretation of 67 Pa. Code §77.24 which states that 'procedures for alcohol breath testing shall include, at a minimum: (1) Two *consecutive actual* breath tests, without a required waiting period between the two tests.' The trial court in this case ruled that Schraf had complied with the regulation."

The Commonwealth Court, in interpreting 67 Pa. Code §77.24, emphasized that the procedures for alcohol breath testing shall include at a minimum "two consecutive actual breath tests, without a required waiting period between the two tests." The trial court had reason to think that there is an ambiguity in this provision and that since the defendant had provided two readings, although separated by one insufficient sample, this was in accordance with the code. In overruling the lower court, Commonwealth Court stated:

"DOT argues that the trial court's interpretation of the regulation is erroneous, in that it omits the word 'actual' from the regulation. DOT argues that 'actual' in this context requires a test at which a valid reading is obtained. It is well settled that an administrative agency's interpretation of its own regulation is entitled to deference unless the interpretation is clearly erroneous. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Pelton v. Department of Public Welfare,* 514 Pa. 323, 423 A.2d 1104 (1987). In *Flickinger v. Department of Transportation,* 119 Pa.

Commw. 315, 547 A.2d 476 (1988), we upheld a suspension for failure to provide a second breath test before the machine went through its cycle and purged itself. In the present case, Hays testified that when Schraf failed to provide sufficient breath on the first unsuccessful test, the breathalyzer's time ran out. Furthermore, we must agree with DOT that the trial court's interpretation of the regulation has the effect of reading out the word 'actual.' For all of these reasons, we must conclude that the trial court erred in granting the demurrer in this case. See *Vasiliades v. Department of Transportation, Bureau of Driver Licensing,* 134 Pa. Commw. 7, 578 A.2d 981 (1990). . .''

Finally, there is a very recent opinion, *Commonwealth v. Pestock* (slip opinion of December 1990), where the driver registered 0.143 percent and 0.131 percent on the machine, but the readings were recorded as deficient because he had not supplied sufficient breath. The court held that, although the regulations do not specifically address the question of what constitutes a ''proper sample,'' an example such as this did not constitute an ''actual breath test.'' It was noted that the code defines an alcohol breath test as ''chemical testing of a sample of a person's expired breath in order to determine the concentration of alcohol in the person's blood,'' and since the machine itself signalled that a deficient sample was obtained, this indicated that the true concentration of alcohol could not be determined. It also noted that the officer testified that the driver did not follow his instructions and continually allowed air to escape along the sides of the machine's mouthpiece, which evidenced less than a total conscious effort and was tantamount to a refusal.

While we are not overly persuaded by the decisional law interpreting the statute and the code, it is

on point; and this, of course, is binding upon us. Under the facts of the case before us the result reached is certainly an equitable one, and while the one-year suspension of license is indeed a severe penalty, the consequences of driving under the influence of alcohol are all too often of a far greater magnitude.

We are reminded of Lincoln's statement, at the height of the Civil War, that the suspension of habeas corpus and the use of arbitrary arrest could be justified during such a national emergency, since it was better to temporarily sacrifice one part of the Constitution than to see the whole document swallowed up by chaos.

Accordingly, we enter the following

## ORDER

And now, March 1, 1991, the appeal is dismissed, and the action of the Pennsylvania Department of Transportation in suspending the appellant's license for a period of one year is affirmed.