IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jasmine Albright                          :
                                          :
              v.                          :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing,               :        No. 124 C.D. 2019
                          Appellant       :        Submitted: August 9, 2019


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: November 7, 2019


          The Commonwealth of Pennsylvania, Department of Transportation,
Bureau of Driver Licensing (DOT) appeals from the January 17, 2019 order of the
Court of Common Pleas of Allegheny County (trial court), which sustained the
statutory appeal of Jasmine Albright (Licensee) from a 12-month suspension of her
operating privilege by DOT pursuant to Section 1547(b)(1)(i) of the Vehicle Code,
75 Pa.C.S. § 1547(b)(1)(i),[1] commonly referred to as the Implied Consent Law, as a

_____

          [1] Section 1547(b)(1)(i) provides as follows:

                    **§ 1547. Chemical testing to determine amount of alcohol or
                    controlled substance**

                    . . .

result of Licensee's refusal to submit to chemical testing upon her arrest for driving under the influence of alcohol or a controlled substance (DUI).[2]  After review, we reverse.

DOT informed Licensee that her operating privilege would be suspended for 12 months as a result of her refusal to submit to a chemical test of her breath on October 28, 2017.  Licensee appealed to the trial court pursuant to Section 1550(a) of the Vehicle Code, 75 Pa.C.S. § 1550(a),[3] and a hearing was held on January 17, 2019, at which Licensee appeared *pro se*.  *See* Notes of Testimony, January 17, 2019 (N.T.); Reproduced Record (R.R.) at 8a-44a.

Pittsburgh Police Officer Keith Edmonds testified at the hearing.  *See* N.T. at 4-15; R.R. at 11a-22a.  Officer Edmonds testified that he was dispatched by 9-1-1 services to the scene of an automobile crash at 1:17 a.m. on the morning of

---

**(b) Civil penalties for refusal.—**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(b)(1)(i).

[2] 75 Pa.C.S. § 3802.

[3] Section 1550(a) of the Vehicle Code provides:

Any person . . . whose operating privilege has been . . . suspended . . . by the department shall have the right to appeal to the court vested with jurisdiction of such appeals . . . .

75 Pa.C.S. § 1550(a).

October 28, 2017. N.T. at 5; R.R. at 12a. Upon arriving at the scene, Officer Edmonds observed a vehicle crashed into a wooded area. N.T. at 7; R.R. at 14a. Officer Edmonds explained that, when he approached the vehicle, he observed Licensee, dressed in a bra and no shirt or shoes, sitting alone in the driver's seat, revving the vehicle's engine. N.T. at 7-8; R.R. at 14a-15a. He also observed an open container of alcohol in the cup holder of the vehicle's center console. N.T. at 11; R.R. at 18a.

Officer Edmonds had to help Licensee alight from her vehicle. N.T. at 8; R.R. at 15a. Once Licensee was outside her vehicle, Officer Edmonds noticed a strong odor of alcohol coming from her person, that she had bloodshot eyes, that her speech was slurred, and that her balance was off. N.T. at 8-9; R.R. at 15a-16a. Licensee had no visible cuts, bumps, or bruises, and she declined medical attention. N.T. at 9; R.R. at 16a. Officer Edmonds arrested Licensee for suspicion of DUI. N.T. at 10; R.R. at 17a.

Following the arrest, Officer Edmonds transported Licensee to the police station. N.T. at 11-12; R.R. at 18a-19a. He explained to Licensee that he was transporting her to the station where she would undergo a breathalyzer test. N.T. at 12; R.R. at 19a. Once at the station, Officer Edmonds handed Licensee over to Officer Glenn Aldridge for chemical testing. N.T. at 13; R.R. at 20a.

Officer Aldridge also testified at the hearing. *See* N.T. at 16-27; R.R. at 23a-34a. Officer Aldridge[4] explained that on the evening in question, the DataMaster DMT breathalyzer machine was functioning, calibrated, and certified

---

[4] Officer Aldridge has been a Pittsburgh Police Officer since 1989 and has been certified to administer blood alcohol concentration breath testing with the DataMaster DMT instrument since approximately 2003. N.T. at 16-17; R.R. at 23a-24a.

3

for accuracy in accordance with DOT regulations. N.T. at 17; R.R. at 24a. Officer Aldridge explained that he asked Licensee whether she would submit to a chemical test of her breath and that she originally refused.[5] N.T. at 19; R.R. at 26a. After her initial refusal, Officer Aldridge read Licensee the DL-26A form verbatim, in its entirety. N.T. at 20; R.R. at 27a; *see also* DL-26A Form, R.R. at 42a. The DL-26A form Officer Aldridge read to Licensee states as follows:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of breath.
>
> 3. If you refuse to submit to the breath test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the breath test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then because of your refusal, you will be subject to more severe penalties set forth in Section 3802(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail

---

[5] Officer Aldridge explained that, after a brief conversation with Licensee during which he confirmed her information, he conducted paperwork while waiting out a DOT-regulated 20-minute waiting period. N.T. at 18-19; R.R. at 25a-26a. Officer Aldridge testified that, during the course of the 20-minute observation period, he did not observe Licensee eat, drink, or regurgitate any material. N.T. at 19; R.R. at 26a.

and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.00.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a breath test, you will have refused the test.

DL-26A form, Hearing Exhibit #1, R.R. at 42a. Officer Aldridge testified that he explained to Licensee that signing the form was not an admission of guilt, but instead a statement that she understood her rights, and Licensee signed the form. N.T. at 20; R.R. at 27a.

Officer Aldridge further testified that, after signing the DL-26A form, Licensee orally agreed to submit to chemical breath testing. N.T. at 21-22; R.R. at 28a-29a. Therefore, Officer Aldridge provided Licensee with information and instructions regarding the test. N.T. at 22; R.R. at 29a. Officer Aldridge instructed Licensee that she would have to blow into the machine until he told her to stop, and that she would be required to successfully complete two valid breath samples in succession to complete the testing. N.T. at 22; R.R. at 29a.

On her first try, Officer Aldridge explained, Licensee submitted a valid sample. N.T. at 22; R.R. at 29a. Officer Aldridge then instructed her to submit a second valid sample, but she sucked her breath in backward, as opposed to blowing, which recorded a "suck back" error and aborted the test. N.T. at 23; R.R. at 30a. Thereafter, Officer Aldridge offered Licensee the opportunity to conduct a second test, to which Licensee agreed. N.T. at 23; R.R. at 30a. Again, Officer Aldridge instructed Licensee to blow, not suck back, and that sucking back a second time would cause the test to abort and be deemed a refusal. N.T. at 23; R.R. at 30a.

5

Despite this instruction and warning, Licensee again sucked back instead of blowing, which caused the breathalyzer machine to shut down. N.T. at 24; R.R. at 31a. Officer Aldridge deemed this a refusal. N.T. at 24; R.R. at 31a.

Officer Aldridge explained that at no time did Licensee inform him of any breathing issues or difficulties that would have adversely affected her ability to provide two valid breath samples, and that Licensee did not gasp or wheeze at any time during the process. N.T. at 25; R.R. at 33a. He further testified that Licensee never informed him that she did not understand the breath testing requirements, never asked him to re-read the instructions, and never asked for further explanations of the testing instructions. N.T. at 26; R.R. at 34a.

DOT then rested. The trial judge then explained that this case was the third case to have come before him involving what he regards as a deficient chemical breath test warning because the DL-26A form did not expressly state that two valid samples were required to complete the chemical testing. N.T. at 30-33; R.R. at 37a-40a. The trial court noted that, since the first of these cases, which resulted in the trial court being overturned by this Court, as discussed *infra*,[6] DOT has changed the DL-26 form to clearly reflect that two valid samples are required to complete breath testing. N.T. at 30-31; R.R. at 37a-38a. The trial court then sustained Licensee's appeal. N.T. at 32-33; R.R. at 39a-40a. DOT timely appealed to this Court.

On appeal,[7] DOT argues that the trial court abused its discretion and erred as a matter of law by finding that the DL-26A form was deficient because it

---

[6] *See Flaherty v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 635 C.D. 2017, filed May 11, 2018).

[7] "Our standard of review is limited to determining whether common pleas committed an error of law, whether common pleas abused its discretion, or whether the findings of fact are

6

did not advise Licensee that she had to successfully give two valid breath samples to satisfactorily complete a breath test. *See* DOT's Brief at 14-21. We agree.

This Court decided this exact issue on nearly identical facts in *Flaherty v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 635 C.D. 2017, filed May 11, 2018), over which, as previously noted, the same trial court and judge also presided at the Court of Common Pleas level. *Flaherty* involved a statutory appeal of an 18-month license suspension for refusal to submit to chemical breath testing following an arrest for suspected DUI. *Flaherty*, slip op. at 2. In *Flaherty*, after arresting the licensee on suspicion of DUI after a single car crash, police read the exact DL-26A form to the licensee as Officer Aldridge read to Licensee in the instant matter. *Id.* at 3-5. The testimony also established that the police officer told the licensee before the testing began that two valid breath samples would be required to complete the chemical testing. *Id.* at 4. The licensee then provided one valid breath sample above the legal limit before failing to submit a second valid sample. *Id.* at 5. The police deemed the attempt a refusal and DOT suspended the licensee's license. *Id.* However, the trial court concluded that the fact that the DL-26A form read to the licensee did not include express language explaining that a successful chemical test requires two valid breath tests, the licensee had not been sufficiently warned that her failure to take two breath tests would constitute a refusal and sustained the licensee's license suspension appeal. *Id.* at 6.

DOT appealed, arguing that the trial court abused its discretion and erred as a matter of law when it concluded that the DL-26A form had to advise licensees that they would be required to submit to two breath tests. *Flaherty*, slip

---

supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018).

op. at 6-8. This Court reversed and reinstated the licensee's license suspension. *Id.* at 15. In addressing the merits, this Court explained as follows:

> Section 1547(a) of the Vehicle Code provides, in relevant part:
>
>> (a) General Rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to **one or more** chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . . .
>
> 75 Pa. C.S. § 1547(a) (emphasis added). If a licensee refuses to submit to a request for chemical testing, the testing shall not be conducted, but DOT shall suspend the operating privilege of the licensee, in this case, for 18 months. 75 Pa. C.S. § 1547(b). Section 1547(b)(2)(i) of the Vehicle Code requires an officer to inform the licensee, as relevant here, that her "operating privilege will be suspended upon refusal to submit to **chemical testing**." 75 Pa. C.S. § 1547(b)(2)(i) (emphasis added). Section 1547 of the Vehicle Code does not require that two breath tests be administered, nor require an officer to inform a licensee that two breath tests will be required. DOT, however, was directed to promulgate Section 77.24 of DOT's regulations pursuant to "the legislative mandate of 75 Pa. C.S. § 1547(c)(1)," *Bush v. Commonwealth*, 535 A.2d 754, 755 (Pa. Cmwlth. 1988), which provides, in relevant part, that "[c]hemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and

8

Transportation," 75 Pa. C.S. § 1547(c)(1). Section 77.24(b) of DOT's regulations in turn, sets forth that "[t]he procedures for alcohol breath testing shall include, at a minimum: (1) Two consecutive actual breath tests, without a required waiting period between the two tests." 67 Pa. Code § 77.24(b). DOT's regulations do not require an officer to inform a licensee that she will have to submit to two breath tests, and DOT Form DL-26A does not contain this information.

In order to suspend Licensee's operating privilege for refusing to submit to a chemical test of her breath, DOT had to prove that:

> (1) Licensee was arrested for violating Section 3802 of the Vehicle Code by a police officer who had "reasonable grounds to believe" that Licensee was operating or was in actual physical control of the movement of a vehicle while in violation of Section 3802 (i.e., while driving under the influence); (2) Licensee was asked to submit to a chemical test; (3) Licensee refused to do so; and (4) Licensee was specifically warned that a refusal would result in the suspension of [her] operating privileges and would result in enhanced penalties if [s]he was later convicted of violating Section 3802(a)(1).

*Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). The only warnings required to be given to a licensee are those contained in Section 1547(b)(2) of the Vehicle Code and by our Supreme Court in [*Dep't of Transp., Bureau of Traffic Safety v.*] *O'Connell* [555 A.2d 873, 878 (Pa. 1989)]. *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 736 (Pa. Cmwlth. 2017) (stating that "there is no constitutional requirement for a police officer to provide any implied consent warnings to a driver arrested for DUI"). Section 1547(b)(2) of the Vehicle Code does not require that the implied consent warnings contain any specific wording. *Yourick v. Dep't of Transp.,*

9

> *Bureau of Driver Licensing*, 965 A.2d 341, 345 (Pa.
> Cmwlth. 2009). Rather, the warnings "must merely
> 'inform' a licensee that his/her 'operating privilege will be
> suspended upon refusal to submit to chemical
> testing.'" *Id.* (quoting 75 Pa. C.S. § 1547(b)(2)(i)). Once
> DOT satisfies its burden of proof, the burden shifts to the
> licensee to prove that she was incapable of making a
> knowing and conscious refusal or that she was physically
> unable to take the test. *Kollar v. Dep't of Transp., Bureau
> of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010).

*Flaherty*, slip op. at 10-12 (emphasis in original; footnote omitted).

Additionally, the *Flaherty* Court noted precedent dating back over 30 years that held that "the applicable statutes and regulations reveal no requirement that an officer warn a licensee, **before testing begins**, that **two** breath tests are required by [DOT's] regulations. Section 1547(b)(2) requires only that an officer warn that operating privileges 'will be suspended upon refusal to submit to chemical testing.'" *Flaherty*, slip op. at 12-13 (quoting *Dep't of Transp., Bureau of Driver Licensing v. Viglione*, 537 A.2d 375, 377 (Pa. Cmwlth. 1988)) (emphasis in original). The Court further explained that this precedent has established that no meaningful distinction exists between "a warning that **two** breath tests are required before any test is administered, as the trial court mandated, and the officer's clear warning that a **second** test was required following the administration of the first test." *Id.* at 13 (quoting *Viglione*, 537 A.2d at 377).

The *Flaherty* Court then determined that the record established that DOT met its prima facie burden of proof to show that the licensee refused to submit to chemical testing after being specifically warned that such a refusal would result in a suspension of her operating privileges where: (1) there was no question the licensee was arrested for DUI and asked to submit to chemical testing; (2) the

10

licensee did not challenge, and the trial court did not discredit, the police testimony that licensee was orally informed that she would need to submit to two breath tests; (3) the licensee provided an initial breath test but failed to provide a second sufficient breath sample during the second test, which constituted a per se refusal under the law. *See Flaherty*, slip op. at 13-14. The *Flaherty* Court noted that, because DOT had met its burden, the burden shifted to the licensee to show that her refusal was not knowing and conscious or that she was physically unable to take the test. *Id.* at 14. The *Flaherty* Court then reversed the trial court because the licensee failed to carry this burden. *Id.*

Finally, in reversing the trial court, this Court expressly stated, "[w]e cannot agree with [the l]icensee's claim that because DOT Form DL-26A refers to "**a** chemical test" and "**the** breath test," and not two breath tests, that [the licensee] was somehow misled into consenting to testing." *Flaherty*, slip op. at 14 (emphasis in original).

The facts and arguments presented in the instant matter are nearly indistinguishable to those presented and decided by this Court in *Flaherty*. Like *Flaherty*, this case involves a one-car accident, after which the police read Licensee the DL-26A form verbatim while also verbally explaining that a successful breath test would require two valid breath samples. As in *Flaherty*, Licensee then provided one valid breath test before causing an error in the testing instrument that police construed as a refusal. The trial court then sustained the instant appeal based on the argument that the DL-26A form provided a deficient warning because it seemingly referred to a single chemical test ("a chemical test" and "the breath test"), as opposed to stating that a successful chemical test required Licensee to provide two valid breath samples. *See* Trial Court Opinion at 5-6. This is the exact argument this

11

Court previously examined and expressly rejected in *Flaherty*. *See Flaherty*, slip op. at 14. DOT herein makes the same arguments it forwarded in *Flaherty*. Therefore, given the identical nature of the facts and arguments presently before us, and based on the longstanding law cited and the reasons stated in *Flaherty*, we find that the trial court erred in sustaining Licensee's appeal.

Accordingly, we reverse the trial court's order and reinstate DOT's 12-month suspension of Licensee's operating privilege.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jasmine Albright      :
          :
    v.       :
          :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing,    : No. 124 C.D. 2019
      Appellant  :

## O R D E R

AND NOW, this 7th day of November, 2019, the January 17, 2019 order of the Court of Common Pleas of Allegheny County is REVERSED, and the 12-month suspension of Jasmine Albright's operating privilege is REINSTATED.

_____
CHRISTINE FIZZANO CANNON, Judge